DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 2014-28 |
| | ) | |
| LOUIS MILTON WILLIS, | ) | |
| | ) | |
| Defendant. | ) | |

ATTORNEYS:

**Jennifer Leigh Blackwell, Esq.**
**Peter Mason, Esq.**
**Jason D. Weitz, Esq.**
United States Department of Justice, Criminal Division
**Ronald Sharpe, United States Attorney**
**Delia Smith, AUSA**
United States Attorney's Office
St. Thomas, VI
        *For the United States of America,*

**Daniel Louis Cevallos, Esq.**
Cevallos & Wong, LLP
Philadelphia, PA
        *For defendant Louis Milton Willis.*

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 2

## MEMORANDUM OPINION

Before the Court is the motion of defendant Louis Willis, as supplemented, for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33.

### I.   FACTUAL AND PROCEDURAL HISTORY

Louis Milton Willis ("Willis") was the Executive Director for the Twenty-Eighth Legislature of the Virgin Islands (the "Legislature"). He was in that position from 2009 through 2011. While serving as the Executive Director of the Legislature, Willis was involved in securing contractors to perform renovations to the Legislature building. Three contractors – Wilson John Marie ("Marie")(Contractor C), Frank James ("James")(Contractor B), and Alwin Williams, Sr. ("Williams")(Contractor A) – were among those hired by Willis to assist in renovating the Legislature. Marie, James, and Williams all gave cash or other items of value to Willis during their contracts, allegedly for the purpose of securing more government work or ensuring payment of their invoices during the renovation.

Willis was indicted on May 8, 2014.  Counts One, Three, and Five charged Willis with federal programs bribery, in violation of Title 18, Section 666 of the United States Code ("Section

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 3

666"). Counts Two, Four, and Six charged Willis with extortion under color of official right, in violation of Title 18, Section 1951 of the United States Code (the "Hobbs Act").

The case went to trial on November 17, 2014.  At trial, the government introduced the testimony of the three contractors regarding their contacts with Willis. The contractors each also testified as to what they had provided to Willis in the form of either cash or other items and services. The government also introduced the testimony of several government employees from the Virgin Islands Bureau of Internal Revenue ("VIBIR"), the Legislature, the Office of Management and Budget ("OMB"), and the Virgin Islands Inspector General's Office ("OIG").

Marie was the first contractor to testify.  Marie stated that he was a carpenter in the United States Virgin Islands. He testified that he had done work for a renovation of the Legislature during the years 2010 and 2011.  Marie stated that Willis drafted a contract for that work.  Marie further testified that the hours he submitted would be reviewed and approved by Willis, who would then sign the invoice.  Once the invoice was signed, Marie stated he would be paid by the Legislature's business office.

Marie testified that he would then give some of the monies he had been paid to Willis. When asked about the payment to

Willis, Marie stated that it was "[t]o keep the job going, keep [Marie] going for the job." (Nov. 17, 2014, Trial Tr. 148:20.) When asked how much money he had given to Willis, Marie said it was "around, around three times, about $5,000." (*Id.* 148:22-23.) Marie further stated that Willis had instructed Marie to hire a relative of one of Willis's coworkers, and that Marie had done so.

James was the second contractor to testify.  He stated that he owned a business specializing in air conditioning installation, maintenance, and repair.  James testified that he performed work on the Legislature building during the renovation. During the renovation, James's contact in the Legislature was Willis. James testified that at various points, Willis asked James for: $1,000, to evaluate Willis's home air conditioning, and for $10,000.  James stated that he did not pay Willis when first asked for $1,000. James testified that he did go to Willis's home, looked at the air conditioning units, and replaced an air conditioner there without charging Willis for the unit or for the installation. Finally, James testified that he wrote a check for $10,000 to a paving company to assist Willis. When asked why he wrote the check to the paving company rather than to Willis himself, James said that Willis told James that Willis needed the money to pave Willis's driveway. James

testified that the $10,000 check was a loan to Willis. When asked about loan terms or interest, James said that there were no terms for repayment or interest. James testified that, to date, the funds had not been repaid.

The final contractor to testify was Williams. Williams stated that he owned a company that did excavation and demolition. Williams testified that while he was at the Legislature, speaking with Willis, that Willis mentioned having money problems.  Thereafter, Williams gave Willis $3,000 in cash. Williams stated that he gave Willis the money in order to ensure Willis would "look out for [Williams] down the road." (Nov. 18, 2014, Trial Tr. 71:20-21.)  Specifically, Williams hoped that Willis would consider using Williams's company for future work. (*Id.* 71:23-24.)

Michael Benjamin ("Benjamin"), acting business director for the Legislature, testified about Willis's role as the Executive Director at the Legislature. Benjamin stated that the Executive Director was tasked with general oversight of the operation, including anything that had to do with contracts. According to Benjamin, the Executive Director answered solely to the President of the Legislature. As business director, Benjamin paid invoices on behalf of the Legislature. Funds used for the payment of contractors were appropriated for the Legislature and

came from the Government of the Virgin Islands' treasury.

Benjamin stated that the Government of the Virgin Islands' funds

included federal funds. Finally, Benjamin testified regarding

the Executive Director's authority to go out and solicit and

accept contracts on behalf of the Legislature. Benjamin said

that such contracts bound the Legislature. Benjamin stated that

the contracts entered by the Executive Director did not require

approval from the Legislature in order to be valid.

Following the introduction of testimony from each of the

government's witnesses, the government rested.

Thereafter, Willis moved for a judgment of acquittal. The

Court denied the motion. Willis then presented his defense,

calling a number of witnesses.  Following the conclusion of

Willis's case-in-chief, Willis again moved for a judgment of

acquittal. The Court denied the renewed motion.

On November 19, 2014, the jury returned a verdict finding

Willis guilty of Counts One, Two, Three, and Four.  Willis was

acquitted as to Counts Five and Six.

Thereafter, Willis filed a motion for judgment of acquittal

or, in the alternative, for a new trial.  Willis asserts several

legal arguments for why the government has failed prove his

guilt under either Section 666 or the Hobbs Act. In the

alternative, he asserts that certain alleged errors that

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 7

occurred at trial entitle him to a new trial. The government opposes Willis's motion.

## II.  **DISCUSSION**

### A. Rule 29 – Motion for a Judgment of Acquittal

A judgment of acquittal is appropriate under Rule 29 if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'")(quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)).

An insufficiency finding should be "'confined to cases where the prosecution's failure is clear.'" *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "Courts must be ever vigilant in the context of [Rule] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citations omitted); *see also*

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 8

*United States v. Ashfield*, 735 F.2d 101, 106 (3d Cir. 1984)

("Our task is not to decide what we would conclude had we been

the finders of fact; instead, we are limited to determining

whether the conclusion chosen by the fact finders was

permissible.").

The government may sustain its burden entirely through

circumstantial evidence. *Bobb*, 471 F.3d at 494; *see also United

States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). A motion for

acquittal should be granted when there is a "total absence of

evidence that [the] defendant had any connection" with the

crimes alleged and proved. *United States v. Darrell*, 629 F. 2d

1089, 1091 (5th Cir. 1980) (conviction reversed with directions

to enter judgment of acquittal in mail fraud case, noting there

was little Fifth Circuit precedent saying what evidence would

permit an inference of the defendant's identity).

**B. Rule 33 – Motion for a New Trial**

When deciding a Rule 33 motion for a new trial, the Court

is provided somewhat more discretion than what is afforded under

Rule 29.  Under Rule 33, the Court may grant a new trial "in the

interest of justice." *United States v. Charles*, 949 F. Supp.

365, 368, 35 V.I. 306 (D.V.I. 1996).  In assessing such

"interest", the court may weigh the evidence and credibility of

witnesses. *United States v. Bevans*, 728 F. Supp. 340, 343 (E.D.

Pa. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990).  If the Court determines that there has been a miscarriage of justice, the court may order a new trial. *Id*.  "The burden is on the defendant to show that a new trial ought to be granted. Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Clovis*, Crim. No. 94-11, 1996 U.S. Dist. LEXIS 20808, at *5 (D.V.I. Feb. 12, 1996).

A defendant is required to show there is newly discovered evidence or that there was reversible error at his trial in order to be granted a new trial pursuant to Federal Rule of Criminal Procedure 33. "[A] district court 'can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has been convicted.'" *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)).

## III. <u>ANALYSIS</u>

### A. Rule 29

Willis has filed a post-trial motion, and a supplement thereto, for a judgment of acquittal pursuant to Rule 29 on Counts One, Two, Three, and Four.  A judgment of acquittal is

appropriate under Rule 29 if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt. *Bobb*, 471 F.3d at 494. The Government's burden to show proof beyond reasonable doubt must be met as to each element of the alleged crimes. *See In re Winship*, 397 U.S. 358, 361-62 (1970).

**1. Counts One and Three: Federal Programs Bribery**

The essential elements that the government must satisfy for Section 666, federal programs bribery are: (1) that the defendant was an agent of a state government or a state governmental agency; (2) that the defendant corruptly solicited or accepted something of value with the intent to be influenced or rewarded in connection with the business of the state or state agency; (3) that the defendant accepted something of value in connection with the business or transactions of the state involving anything of value of $5,000 or more; (4) that the state received in excess of $10,000 in federal funds in any single year; and (5) that the defendant acted willfully and knowingly. *See* 18 U.S.C. § 666; *see also United States v. Foley*, 851 F. Supp. 507, 509 (D. Conn. 1994).

With regard to the first element, Willis argues that he was not an agent of the Government of the Virgin Islands (as alleged

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 11

in the Indictment) or of the executive branch of the Government

of the Virgin Islands. Willis asserts that he was an agent

solely of the Legislature.

Section 666 defines the word "agent" as "a person

authorized to act on behalf of another person or a government

and, in the case of an organization or government, includes a

servant or employee, and a partner, director, officer, manager,

and representative[.]" 18 U.S.C. § 666(d)(1). Willis, as the

Executive Director of the Legislature was empowered to bind the

Legislature to contracts. No permission or approval had to be

sought from the President of the Legislature or the Senators

themselves. Willis could thereby single-handedly enter contracts

on the Legislature's behalf. The issue is whether this ability

to act for the Legislature constitutes acting for the Government

of the Virgin Islands itself.

The Government of the Virgin Islands in its current form

was created by the Revised Organic Act of 1957. *See generally* 48

U.S.C. §§ 1541 *et seq.* (the "Revised Organic Act"). "The

[Revised] Organic Act of the Virgin Islands created three

branches of government in the Virgin Islands. *See* 48 U.S.C. §

1571 (legislative branch); *id.* § 1591 (executive branch); *id.* §

1611 (judicial branch)." *Smith v. Magras*, 124 F.3d 457, 465 (3d

Cir. 1997). The Legislature, which is one of the three

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 12

coordinate branches, is a constituent part of the Government.

*See, e.g., United States v. Fernandez*, 722 F.3d 1, 9 (1st Cir.

2013) ("The Puerto Rico Senate is a constituent part of the

Commonwealth government, created by the Puerto Rico

Constitution.")

All funds of the Government of the Virgin Islands are held

within the Virgin Islands Department of Finance ("Finance"). *See*

V.I. CODE ANN. tit. 3, § 177(a)(3) ("The Department [of Finance]

shall exercise general control over the enforcement of the laws

relating to finance, and shall . . . provide for a depository of

all public funds[.]") Though the government's funds are retained

in Finance, Finance has no authority to appropriate those funds.

Indeed, only the Legislature has the authority to appropriate

government monies. *See* V.I. CODE ANN. tit. 33, § 3101 (prohibiting

expenditures in excess of legislative appropriations). When

appropriating funds, distributing them to agencies, other

branches of Government, or to the Legislature's coffers

themselves, the Legislature thereby acts as a constituent part

of the Government of the Virgin Islands.

Because the Legislature is an integral part of a three-

branch system, it would be error to categorize it as simply

another government agency. Indeed, as this Court has previously

stated

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 13

> [t]here can be but one Government of the Virgin
> Islands. It is comprised of three separate and
> coequal branches—the Executive, Legislative, and
> Judiciary. Much like the branches of a tree,
> neither of these branches can truly exist
> without the other. To contend otherwise leads to
> the absurd result that the Virgin Islands,
> unlike the United States, or any state therein,
> or indeed any country, province, or territory of
> which this Court is aware, is governed by three
> governments. The complexities and paradoxes of
> such a bizarre arrangement [are] difficult to
> fathom. Yet, this view — one in which it is
> impossible to sue a sovereign entity as a whole;
> one in which every component branch, agency, and
> perhaps even each and every person which compose
> a Government must be sued individually and
> separately — is urged on this Court today. The
> Court declines to adopt such a view.

*Kendall v. Superior Court, Gov't of the Virgin Islands*, Civ. No.
2010-109, 2013 WL 785518, at *6 (D.V.I. Mar. 1, 2013) *aff'd sub
nom. Kendall v. Gov't of Virgin Islands*, 596 F. App'x 150 (3d
Cir. 2015).

Despite the integral nature of the Legislature's position
within the Government of the Virgin Islands, Willis argues that
he was an agent solely of the Legislature and not the Government
in total. He is not the first defendant to make such an
argument.

In *United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013),
the United States Court of Appeals for the First Circuit was
faced with a similar argument. The defendants in *Fernandez*
consisted of a senator in the Senate of the Commonwealth of

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 14

Puerto Rico and a contractor. *Fernandez*, 722 F.3d at 6. The

defendants argued that a senator was not an "agent" within the

meaning of Section 666 and, if he was an agent, that he was an

agent of the Puerto Rico Senate and not an agent of the

Commonwealth of Puerto Rico. *Id.* at 8-10. After rejecting the

view that senators could not be "agents" within the meaning of

Section 666, the First Circuit stated

> Once again we need go no further than the plain
> language of the statute to conclude that
> Martínez and de Castro Font may be properly
> considered "agents" of the Commonwealth of
> Puerto Rico. Among the five types of entities
> for which one may be an agent within the meaning
> of § 666 is a state government. *See* 18 U.S.C. §
> 666(a)(1), (2) (referring to "an agent of an
> organization, or of a State, local, or Indian
> tribal government, or any agency thereof"). The
> Puerto Rico Senate is a constituent part of the
> Commonwealth government, created by the Puerto
> Rico Constitution. *See* P.R. Const. art. III, §
> 1. Its members are thus part of the limited
> category of government officials who represent
> the "State" as a whole, unlike employees of
> localities or of agencies at every level of
> government. As such, they easily fall within the
> concept of "an agent of ... a State ...
> government." Martínez and de Castro Font were
> thus properly considered agents of the
> Commonwealth of Puerto Rico under § 666.

*Id.* at 9.

Though *Fernandez* dealt with elected senators rather than

officers or employees of the Puerto Rico Senate, the Court finds

the case persuasive. The status of the defendant senator as a

senator was the manner in which the First Circuit established

his status as an "agent". *Fernandez*, 722 F.3d at 8 ("Indeed, the plain language of the statute includes a "representative" of a "government" in the list of positions that fall under the statute's definition of "agent," 18 U.S.C. § 666(d)(1), and there is no more classic government "representative" than a legislative branch officer.")  The defendant's specific role as a senator did not, however, appear within the First Circuit's rationale for why an individual acting for the Puerto Rico Senate is thereby acting for the Commonwealth of Puerto Rico. *Id.* at 9.

As in Puerto Rico, the Legislature of the Virgin Islands is a constituent and inseparable part of the Government. An individual with the capacity to act for the Legislature would thereby fall within "the limited category of government officials who represent the 'State' as a whole, unlike employees of localities or of agencies at every level of government." *Id.*

Willis was "a person authorized to act on behalf of . . . a government" as a "servant or employee, . . ., director, officer, manager, and representative[.]" 18 U.S.C. § 666(d)(1). As such, he falls within the definition of agent in Section 666.

Willis also argues that the bribes involved in this case were not connected to business transactions of the agency or government which employed him.  This argument seems to be

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 16

premised on Willis's belief that limits "business transactions"

to only the passage of legislation. This belief runs counter to

what is commonly understood as included in the term

"transaction."

The common definition of "transaction" is "something

transacted; especially:  an exchange or transfer of goods,

services, or funds[.]" *See Transaction*, Webster's Third New

International Dictionary (Merriam Webster 1993). A contract for

the provision of construction, excavation, or air conditioner

services would be well within that definition. Indeed, the Court

cannot fathom a definition of the "business transactions of the

Government" which would exclude contracts entered into by the

Government for the maintenance and construction of Government

buildings.

Willis's view of a business transaction for Section 666

purposes also conflicts with the overwhelming body of caselaw.

*See generally, e.g., United States v. Andrews*, 681 F.3d 509 (3d

Cir. 2012) (affirming conviction under Section 666 for accepting

bribes in connection with the award of a government contract);

*United States v. McNair*, 605 F.3d 1152 (11th Cir.

2010)(affirming conviction of contractor who bribed local

officials in order to secure sewage contracts); *United States v.*

*Plaskett*, 50 V.I. 548 (D.V.I. 2008) (denying Rule 29 relief to

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 17

agent of the Virgin Islands who accepted bribes in connection
with government contracts).

The evidence, credited by the jury, established that Willis
accepted money and other things of value in exchange for
awarding contracts to renovate the Legislature. Such contracts
clearly fall within the business transactions of the Government
of the Virgin Islands.

Willis also argues that the government failed to prove that
he accepted something of value in connection with the business
or transactions of the Virgin Islands involving anything of
value of $5,000 or more. Willis correctly argues that the
"value" that must be $5,000 or more is the value of the
transactions the defendant seeks to influence. *See United States
v. Duvall*, 846 F.2d 966, 976 (5th Cir. 1988)("From simply
reading the statute, it is clear that the $5000 figure qualifies
the transactions or series of transactions that the recipient of
the bribe carries out in exchange for receiving 'anything of
value.'").

The government adduced evidence in the form of invoices
establishing the cost of the renovation contracts entered into
by the Legislature and Williams and James respectively.
Williams's contract involved over $20,000 of construction work.
James's contract involved over $300,000 of work on the air

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 18

conditioning system.  Both of these amounts exceed the $5,000

threshold by a substantial amount.

Willis next contends that the fourth element of Section 666

was not proven by the government. Specifically, he asserts that

the bribery alleged was not in connection with any federally

funded program. Willis accepts that the Government of the Virgin

Islands receives more than $10,000 each year in federal funds.

He does not accept that the Legislature itself receives those

funds. Willis's argument presumes that the Legislature is

somehow severable from the Government of the Virgin Islands and

that Willis is only an agent of the former, not the latter. As

discussed above, this premise is deeply flawed. As this Court

has already found, Willis was an agent of the Government of the

Virgin Islands.

There can be no dispute that the Government of the Virgin

Islands received federal funds in excess of $10,000. Indeed,

Debra Gottlieb, employed by the Office of Management and Budget

for the Legislature, testified that each fiscal year the

Government of the Virgin Islands received over 150 million

dollars from the federal government.  That is well in excess of

the $10,000 threshold the government was obligated to meet.

Willis also asserts that there was no *quid pro quo* for

either Count One or Count Three. As such, Willis argues, there

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 19

could be no finding that the received benefit was bribery (or the result of extortion). Specifically, Willis argues that neither James nor Williams provided funds or things of value in exchange for services, based on the evidence adduced at trial.

Willis asserts that James did not state any reason whatsoever for giving Willis the $10,000 or providing air conditioning services for Willis's home. At no point did James testify specifically as to his intent in giving Willis money or free air conditioning assistance. Willis argues that the only evidence adduced was: (1) James gave Willis money; (2) because Willis asked for money.

Though these facts were adduced at trial, this recitation by Willis fails to state the context. James testified that he had entered a contract with Willis to do work for the Legislature renovation. While that contract was being performed, Willis began asking James for money and services. James stated that he and Willis were not friends, though they lived near each other, knew one another, and greeted one another when they passed the other. Finally, another government witness, Clifford Charleswell, testified that Willis had told Charleswell about receiving money from contractors during the Legislature renovation. It is against this backdrop that the jury considered whether or not there was evidence that James gave Willis the

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 20

$10,000 and repaired Willis's air conditioning free of charge with some expectation of favorable treatment from Willis in Willis's professional capacity.

In *United States v. McNair*, 605 F.3d 1152 (11th Cir. 2010), the contractor-defendants were accused of bribing public officials in violation of Section 666. *United States v. McNair*, 605 F.3d 1152, 1167 (11th Cir. 2010). The contractors asserted that the benefits that they had conveyed on the public officials were gifts. *Id.* at 1196.  Despite these protestations, the contractors were convicted. *Id.* at 1174-75. The contractors sought Rule 29 relief. *Id.* at 1195 (considering sufficiency of the evidence).

The Eleventh Circuit found that "ample evidence" showed that the contractors had provided things of value to county employees for the purpose of bribing them. *Id.* at 1196.

> There was no evidence of gifts to these "friends" before the sewer projects began. Instead, the gifts to McNair and Swann and other County employees were made during the same time period of the sewer projects. . . . The jury was free to disbelieve the defendants' claims of gifts for friendship and to find corrupt intent to influence McNair and Swann in connection with the County's massive sewer payments to the contractor-defendants. The juries could readily believe the gifts worth hundreds of thousands of dollars to McNair and Swann after the sewer work began were actually bribes intended to make sure the contractors profited excessively from the work.

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 21

*McNair*, 605 F.3d at 1196.

Here, as in *McNair*, the jury heard testimony that James gave Willis substantial gifts: a new air conditioner, installation of that air conditioner, and $10,000.  The testimony adduced indicated that James and Willis were not friends, and there was no evidence that James had ever given Willis such generous gifts before the Legislature renovation began.  As such, the jury could reasonably have concluded that James's purpose in giving such gifts to Willis was related to the Legislature renovation.

With regard to Williams, Willis simply asserts that the government failed to establish any *quid pro quo*. This argument is unavailing. Williams testified that he gave Willis $3,000 in cash in order to ensure Willis would "look out for [Williams] down the road." (Nov. 18, 2014, Trial Tr. 71:20-21.)  Williams testified that he hoped that Willis would consider using Williams's company for future work. (Id. 71:23-24.) Williams also stated that Willis told Williams that, "he does take care of his people, you know." (Nov. 18, 2014, Trial Tr. 68:23-24.) This is enough to allow the jury to infer that an exchange was intended. *See, e.g.*, *McNair*, 605 F.3d at 1188-89 ("To be sure, many § 666 bribery cases will involve an identifiable and particularized official act, but that is not required to

convict. . . . The intent that must be proven is an intent to

corruptly influence or to be influenced "in connection with any

business" or "transaction," not an intent to engage in any

specific quid pro quo. In concluding § 666 does not require a

specific quid pro quo, we align ourselves with the Sixth and

Seventh Circuits.")

Finally, Willis challenges the Constitutionality of Section

666 as applied to his behavior in this case. Specifically, he

argues that applying Section 666 to conduct which used funds of

indeterminate origin would violate the Spending Clause of the

Constitution. The Supreme Court of the United States has already

ruled on this issue and, contrary to Willis's assertions, the

manner in which the Court did so does not leave room for

Willis's challenge.  In *Sabri v. United States*, 541 U.S. 600

(2004), the Supreme Court stated that

> It is true, just as Sabri says, that not every
> bribe or kickback offered or paid to agents of
> governments covered by § 666(b) will be traceably
> skimmed from specific federal payments, or show up
> in the guise of a quid pro quo for some
> dereliction in spending a federal grant. *Cf.
> Salinas v. United States*, 522 U.S. 52, 56–57, 118
> S.Ct. 469, 139 L.Ed.2d 352 (1997) (The "expansive,
> unqualified" language of the statute "does not
> support the interpretation that federal funds must
> be affected to violate § 666(a)(1)(B)"). But this
> possibility portends no enforcement beyond the
> scope of federal interest, for the reason that
> corruption does not have to be that limited to
> affect the federal interest. Money is fungible,
> bribed officials are untrustworthy stewards of

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 23

> federal funds, and corrupt contractors do not
> deliver dollar-for-dollar value. Liquidity is not
> a financial term for nothing; money can be drained
> off here because a federal grant is pouring in
> there. And officials are not any the less
> threatening to the objects behind federal spending
> just because they may accept general retainers.
> *See Westfall v. United States*, 274 U.S. 256, 259,
> 47 S.Ct. 629, 71 L.Ed. 1036 (1927) (majority
> opinion by Holmes, J.) (upholding federal law
> criminalizing fraud on a state bank member of
> federal system, even where federal funds not
> directly implicated). It is certainly enough that
> the statutes condition the offense on a threshold
> amount of federal dollars defining the federal
> interest, such as that provided here.

*Sabri v. United States*, 541 U.S. 600, 605-06 (2004). A plain reading of the Court's statements in *Sabri* indicate that the Spending Clause is not violated simply because some direct impact on federal funds cannot be proven. In light of that, this Court will not insist on such a showing here.[1]

## 2. Counts Two and Four: Hobbs Act Extortion

The two essential elements of a Hobbs Act extortion claim under 18 U.S.C. § 1951, as alleged in the indictment are: extortion, defined as "the obtaining of property from another

---

[1] Willis also mentions, albeit without indicating how or why it fits within his motion for Rule 29 relief, that the Third Circuit model instructions include an optional instruction on "bona fide" expenses. *See* Third Circuit Model Criminal Instruction 6.18.666A1A-5. Willis does not assert that this Court erred in not including this instruction. Indeed, he does not even assert that any of the transactions were shown by any evidence to be "bona fide transactions." Additionally, Willis did not request that this instruction be included in the jury charge at any time. Finally, Willis does not request any relief as relates to the jury instructions. Considering these facts, the Court is disinclined to further consider Willis's brief mention of the *optional* model instructions.

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 24

with his consent . . . under color of official right," 18 U.S.C.

§ 1951(b)(2); and that such extortion interferes with interstate

commerce. *See United States v. Millet*, 123 F.3d 268, 272-73 (5th

Cir. 1997); *accord United States v. Salvitti*, 464 F. Supp 611,

615 (E.D. Pa. 1979).

Willis argues that the government failed to prove there was

a *quid pro quo*. Specifically, he asserts that generalized

influence is not sufficient to constitute an "official act" and

thus there was no *quid pro quo* in this case under the Hobbs Act.

This argument misunderstands what is necessary to show the *quid*

*pro quo* of extortion in a Hobbs Act context.

> A public official commits extortion under color
> of official right under 18 U.S.C. § 1951(a) when
> the official promises to engage in an official
> act in exchange for a personal gift. *Evans v.*
> *United States*, 504 U.S. 255, 268, 112 S.Ct.
> 1881, 1889, 119 L.Ed.2d 57 (1992). Unless the
> "gift" is a campaign contribution, the quid pro
> quo between the public official and the gift
> giver can be implicit. *United States v. Antico*,
> 275 F.3d 245, 257 (3d Cir .2001). Consequently,
> the official does not have specifically to
> promise anything in return, as long as all
> parties involved recognize that a gift is being
> given in exchange for official action. A wink
> and a nod is good enough. Also, the official
> does not have to promise to perform a specific
> action in exchange for a specific gift; instead,
> the official can accept a "stream of benefits"
> in exchange for one or more official acts as
> though the official is on a retainer. *See United*
> *States v. Kemp*, 500 F.3d 257, 282 (3d Cir.
> 2007).

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 25

*United States v. Donna*, 366 F. App'x 441, 450 (3d Cir. 2010). As the Third Circuit Court of Appeals noted, it can be difficult to discern what is intended when the parties do not clearly express themselves. *Id*. at 450 n.7.

In this case, Williams testified directly that he had given Willis money in order to induce Willis to give him more contracts with the Legislature.  That is, Williams gave Willis property to which Willis was not otherwise entitled.  That property was given to Willis in exchange for Willis, at some future time, doing an official act – binding the Legislature in contract. As to Williams, the *quid pro quo* is quite clear.

As in the Section 666 counts, James did not testify specifically to his intent.  James failed to explain why he chose to give Willis $10,000 or free air conditioners and installation during the course of James's contract with the Legislature. As above, though, the evidence showed that James and Willis were not friends and there was no evidence that James had ever given Willis any kind of gift in the past.  Giving all reasonable benefit of the doubt to the government, the jury could have reasonably inferred that such gifts were in exchange for some kind of consideration as related to James's contract. That is, something of value was exchanged for some manner of

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 26

favorable treatment as related to an official act.  As such, the government adequately proved the first element of extortion.

Willis also argues that, as applied to the conduct at issue in this case, the Hobbs Act is unconstitutionally vague because it fails to put individuals on notice of what behavior is unlawful. "A statute is unconstitutionally vague if it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute or encourages arbitrary and erratic arrests and convictions. A statute can be void for vagueness not only on its face, but as applied, as a result of 'an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *United States v. John-Baptiste*, 747 F.3d 186, 200 (3d Cir.) *cert. denied sub nom. Brooks v. United States*, 134 S. Ct. 2324 (2014) *and cert. denied sub nom. Edwards v. United States*, 134 S. Ct. 2889 (2014)(internal citations and quotations omitted).

On its face, the Hobbs Act prohibits "obtaining property from another, with his consent . . . under color of official right." 18 U.S.C. § 1951(b)(2).

> It is a familiar maxim that a statutory term is generally presumed to have its common-law meaning. As we have explained: Where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which

> it was taken and the meaning its use will convey
> to the judicial mind unless otherwise
> instructed. In such case, absence of contrary
> direction may be taken as satisfaction with
> widely accepted definitions, not as a departure
> from them. At common law, extortion was an
> offense committed by a public official who took
> by colour of his office money that was not due
> to him for the performance of his official
> duties. A demand, or request, by the public
> official was not an element of the offense.
> Extortion by the public official was the rough
> equivalent of what we would now describe as
> taking a bribe."

*Evans v. United States*, 504 U.S. 255, 259-60 (1992)(internal citations and quotations omitted). The issue is thus whether this clear prohibition on the acceptance of things of value in exchange for official acts by government officials clearly prohibits the activities engaged in by Willis.

In *United States v. Williams*, 621 F.2d 123 (5th Cir. 1980), the Fifth Circuit was faced with the issue of whether the Hobbs Act was unconstitutionally vague as applied to a defendant who had accepted gratuities while serving the local government. *See United States v. Williams*, 621 F.2d 123, 125 (5th Cir. 1980). In determining if the Hobbs Act was unconstitutionally vague as applied, the Fifth Circuit found that

> The evidence here showed that when defendant, a
> member of the school board, made his requests
> for money, the other parties were aware of his
> public office. One payor, Arthur Brandin,
> testified that if defendant had not been a
> school board member, he would not have given
> defendant $4000. The evidence demonstrated that

> defendant accepted the money and gratuities, knowing he was not entitled to them in the discharge of his lawful duties, and that payment was induced by his official position. Neither on its face nor as applied in this case is the Hobbs Act unconstitutionally vague.

*United States v. Williams*, 621 F.2d 123, 125-26 (5th Cir. 1980)

Willis states that the statute does not put individuals on notice that accepting gifts from government contractors while a government agent might be criminal. The Court need not decide whether this is true, however, as the disconnected receipt of gifts is not the behavior for which Willis was indicted and convicted. Instead, Willis was convicted of accepting money and other things of value in exchange for, and in connection with, the award of legislature contracts over which Willis had authority or some degree of control.

The contractors who made payments to Willis either testified that they made such payments because of Willis's position with regard to their contracts, or offered testimony from which, taken in context, a jury could so infer. In any event, as applied in this case, the Hobbs Act is not unconstitutionally vague.

The Hobbs Act makes clear that acceptance of anything of value, to which the beneficiary is not entitled, under color of official rights or in exchange for official acts is unlawful. The jury believed the testimony of James, Williams, and

Charleswell and found that Willis accepted money and other
things of value in connection with favorable treatment in
entering future contracts. That behavior is clearly proscribed
by the statute and, as such, the statute is not void for
vagueness as applied.

Considering the law and the facts as discussed above, Rule
29 relief is not appropriate on any of Willis's counts of
conviction.

**B. Rule 33**

Willis is required to show there is newly discovered
evidence, or that there was reversible error at his trial, in
order to be granted a new trial pursuant to Federal Rule of
Criminal Procedure 33. "[A] district court can order a new trial
on the ground that the jury's verdict is contrary to the weight
of the evidence only if it believes that there is a serious
danger that a miscarriage of justice has occurred—that is, that
an innocent person has been convicted." *Davis*, 397 F.3d at 181
(internal quotation omitted). Further, the "burden is on the
defendant to show that a new trial ought to be granted.
Accordingly, the burden is on [the defendant] to show that his
trial resulted in a miscarriage of justice." *United States v.
Saldana*, Crim. No. 2009-32, 2010 WL 3119967 (D.V.I. Aug. 4,
2010) *aff'd*, 473 F. App'x 118 (3d Cir. 2012)

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 30

In total, Willis argues five bases for a new trial. The Court will address each in turn.

## 1. Weight of the Evidence

In his motion for new trial, Willis argues that there was a miscarriage of justice. In support of this argument, Willis simply reasserts the arguments he made in support of his Rule 29 motion discussed above. "[A] district court can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Davis*, 397 F.3d at 181 (internal quotation omitted). The burden to show such a danger exists is on the defendant. *Saldana*, Crim. No. 2009-32, 2010 WL 3119967.

Willis's legal arguments that the evidence adduced fails to establish a *quid pro quo* for either count is as unavailing in this context as it was above.  It certainly falls short of persuading the Court that an innocent person may have been convicted. Similarly, Willis's incorporated legal arguments from the remainder of his Rule 29 motion are also unavailing. Willis's mistaken belief that an individual that could act on behalf of the entirety of the Legislature is not an agent of the Government of the Virgin Islands is no more persuasive in this

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 31

context than in that above. As such, the Court does not find

that the weight of the evidence merits a new trial.

## 2. Admission of 404(b) Evidence

Willis contends that the Court erred in admitting evidence

of a prior bad act and thereby violated Federal Rule of Evidence

404(b).

Rule 404(b) limits the admission of evidence of a crime,

wrong, or other act. *See* Fed. R. Evid. 404(b). In fact, the

Third Circuit has stated quite clearly that Rule 404(b) is

generally a rule of exclusion. *United States v. Caldwell*, 760

F.3d 267, 276 (3d Cir. 2014)("On this point, let us be clear:

Rule 404(b) is a rule of general exclusion, and carries with it

no presumption of admissibility.") In determining what prior

acts may be admissible under Rule 404(b), the Third Circuit has

stated

> Federal Rule of Evidence 404(b), which governs
> the admissibility of a defendant's prior bad
> acts, provides that "[e]vidence of a crime,
> wrong, or other act is not admissible to prove a
> person's character in order to show that on a
> particular occasion the person acted in
> accordance with the character." Fed. R. Evid.
> 404(b)(1). The rule states, however, that
> "[t]his evidence may be admissible for another
> purpose, such as proving motive, opportunity,
> intent, preparation, plan, knowledge, identity,
> absence of mistake, or lack of accident." Fed.
> R. Evid. 404(b)(2).

*United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014).

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 32

> To summarize, Rule 404(b) provides that prior
> act evidence is inadmissible unless the evidence
> is (1) offered for a proper non-propensity
> purpose that is at issue in the case; (2)
> relevant to that identified purpose; (3)
> sufficiently probative under Rule 403 such that
> its probative value is not outweighed by any
> inherent danger of unfair prejudice; and (4)
> accompanied by a limiting instruction, if
> requested.

*Caldwell*, 760 F.3d at 277-78.

During trial, the government elicited testimony from Williams regarding uncharged conduct that took place approximately six years before the activities identified as criminal in the indictment. Specifically, Williams testified that in 2003, while director of the Virgin Islands Bureau of Internal Revenue, Willis had solicited a bribe from Williams in exchange for the release of a tax lien against Williams's business. Willis objected to the introduction of this evidence as violating Rule 404(b). The government asserted in response that the evidence demonstrated intent, motive, knowledge, and lack of mistake.

To determine if this evidence was admissible, the Court first considers if it was offered for a non-propensity purpose that was at issue in the case. The government argued that the evidence went to intent, motive, knowledge, and lack of mistake. Intent or knowledge is an element of all six of the counts in the Indictment. *See* 18 U.S.C. § 666; 18 U.S.C. § 1951.

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 33

Furthermore, evidence of motive and lack of mistake countered Willis's contentions that he understood the items of value given to him as loans or gifts, rather than as bribes. As such, there was a non-propensity purpose that was at issue in the case.

The Court next considers if the prior bad act was relevant to the identified purposes. The act of soliciting funds from an individual who sought an official act, and thereafter taking the sought-after act, is evidence of Willis's intent when he asked people seeking official actions for things of value. Such evidence is, of course, not dispositive on that issue, but it certainly is relevant on that point. Furthermore, the introduction of evidence that Willis had received funds and thereafter undertaken an official act benefiting the payor tended to prove that Willis knew what subsequent payments from that same individual were meant to be. As such, the evidence was relevant to the proffered non-propensity purposes.

The Court next considers if the evidence was unfairly prejudicial under Rule 403. When considering a Rule 403 issue, "the trial court should carefully weigh the probative value of the proffered testimony against its possible prejudicial effects." *Gov't of Virgin Islands v. Felix*, 569 F.2d 1274, 1280 (3d Cir. 1978). Rule 403 "does not offer protection against evidence that is merely prejudicial, in the sense of being

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 34

detrimental to a party's case. Rather, the rule only protects

against evidence that is *unfairly* prejudicial. Evidence is

unfairly prejudicial *only if* it has an undue tendency to suggest

decision on an improper basis, commonly, though not necessarily,

an emotional one." *Carter*, 617 F.2d at 972 (emphasis added).

Evidence of Willis's intent was certainly probative, as it

went directly to one of the elements the government had to prove

and which Willis most vigorously contested. Indeed, this

evidence was some of the most probative on this point, as

proving intent is extremely difficult in the absence of a

defendant's testimony or confession, which the defendant is

never obligated to give. The question before the Court is

therefore whether there was so much prejudice occasioned by this

testimony as to outweigh the evidence's probative value on this

salient issue.

There is always a risk of undue prejudice when the

government introduces a prior, identical (or nearly so) bad act

in a case. First, there is the risk that the jury will use such

evidence for a forbidden purpose – that is, that they will use

it as propensity evidence. Second, where, as here, the bad act

was uncharged, it runs the risk of creating a trial within a

trial and confusing the issues the jury needs to consider.

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 35

Though there is risk in allowing a jury to hear 404(b) evidence because they may use it for some improper purpose, the Court notes that a limiting instruction was given and the Court presumes that its instructions to the jury are followed. Considering next the problem of confusing the jury with a mini-trial, the proposed evidence and rebuttal were not so in-depth and complicated so as to confuse a jury. Indeed, the record indicates that actual testimony about the lien and its removal involved only two witnesses and a minimal number of documents. As such, there was no jury confusion such that might violate Rule 403.

Finally, the Court considers whether a limiting instruction was given, if requested. Indeed, here the Court did give a limiting instruction. Specifically, the Court instructed the jury that, as related to the evidence of the 2003 tax lien bribe, "[t]hat evidence of some other act was admitted only for a limited purpose. You may consider this evidence only for the purpose of deciding whether the defendant had the state of mind, knowledge or intent necessary to commit the crime charged in the indictment . . . . Do not consider this evidence for any other purpose." (Trial Tr., Nov. 19, 2014, 4:21-5:7.)

Considering each of these factors, as instructed by the Third Circuit, the Court finds that admission of the Rule 404(b)

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 36

evidence in this matter was proper.  As such, Willis is not

entitled to a new trial on this basis.

### 3. Proposed Jury Instructions

Willis asserts, with no legal or factual support, that the

Court failed to consider his proposed jury instructions. The

only underpinning for this claim seems to be that the Court held

its charging conference in chambers.

The Court first notes that it devotes due consideration to

everything filed on the docket.  In fact, Willis's proposed jury

instructions were read and considered by the Court.  Failure to

include Willis's proposed instructions in the final draft of the

jury instructions does not indicate whether or not such

instructions were considered. The Court also notes that at no

time did Willis object to the jury charge proposed by the Court.

Indeed, even now Willis fails to identify anything in the

Court's jury charge that was erroneous or to identify anything

that was unlawfully omitted of which he sought inclusion.

Finally, though Willis's counsel was well-aware of the Court's

practice of conducting charging conferences in chambers, Willis

did not object at any time to the holding of the charging

conference in chambers.

Significantly, the parties are permitted as a matter of

course to present, on the record, any objections to the Court's

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 37

charge. (Policies and Procedures, III.P.1.,

http://www.vid.uscourts.gov/sites/vid/files/CVG_Policies_and_Pro

cedures_4-24-14.pdf) No objections were lodged which could be

preserved for review on this issue. Additionally, the Court is

unaware of, and Willis does not cite to, any factual or legal

underpinning for his contention that holding the charging

conference in chambers resulted in discounting Willis's proposed

instructions. As such, Rule 33 relief is not merited by this

claim.

**4. Admission of Williams's Understanding of "Good Looking Out"**

Willis also argues that the Court erred in admitting

testimony from Williams regarding his understanding of the

phrase "good looking out." Williams testified at trial that when

he gave money to Willis, Willis replied with "good looking out."

Williams testified that he understood that phrase to mean "I

appreciate it" or "thank you."

> Under Federal Rule of Evidence 701, lay
> witnesses may state their understanding of the
> use of another person's statements "only if
> rationally based on the perception of a witness
> and helpful either to an understanding of the
> testimony of the witness on the stand or to the
> determination of a fact in issue." *United States
> v. Cox*, 633 F.2d 871, 875 (9th Cir. 1980), *cert.
> denied*, 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d
> 130 (1981).

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 38

*United States v. De Peri*, 778 F.2d 963, 977 (3d Cir. 1985). Such

opinions are based on the witness's direct perception of the

statement, and are not speculative. *See id.*

Here, Williams testified as to his direct perception of

what was said and his personal understanding of what it meant.

He did not speculate on what Willis in fact meant, and

Williams's testimony was not based on anything other than what

he personally observed. Furthermore, it served as evidence that

Willis had received the monies Williams claimed to have paid to

Willis. Indeed, Williams's testimony was the only evidence as to

that payment and Willis's counsel contested that such a payment

was ever made. As such, the testimony was helpful to the trier-

of-fact in determining a fact at issue.

As Williams's testimony as to his understanding of the term

"good looking out" fell within the ambit of Rule 701, it was

properly admitted. Therefore, Willis is not entitled to a new

trial on the basis of Williams's testimony.


**5. Defendant's Confrontation Rights**

Finally, Willis contends that his Constitutional right to

confront witnesses and to present a defense was infringed upon.

Specifically, Willis takes issue with the Court's limiting of

his cross-examination of James. During cross-examination, Willis

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 39

sought to elicit testimony and introduce evidence that James had

violated tax laws of the Virgin Islands and faced potential

liability for those actions. Willis asserts that this testimony

was relevant to establish an agreement James had entered with

the government.

The Court first notes that Willis was allowed to inquire as

to James's agreement with the government. Indeed, at trial, the

following colloquy occurred:

> Q. And you're testifying today under an immunity agreement,
> correct?
> A. I really don't know what would happen.
> Q. Well, you have an agreement with the government where if
> you testify, they will not, they will not use whatever you
> testify against you?
>
> MR. WEITZ: Objection, Your Honor. That's not the agreement.
>
> COURT: Overruled.
>
> THE WITNESS: The only agreement I have is to come here and
> speak the truth.
>
> MR. CEVALLOS: Fair enough.
> Q: You did not first approach federal agents. They
> approached you, correct?
> A: Yes.
> Q: At some point they sat you down and told you you might
> be in trouble; isn't that right?
> A: Not in that word – terms.

(Trial. Tr., Nov. 17, 2014, 292:1-19.) Shortly thereafter,

Willis's counsel sought to inquire as to whether James had

previously been paid "under the table" for unrelated work or

paid taxes on those funds. At sidebar, Willis's counsel asserted

*United States v. Willis*
Criminal No. 2014-28
Memorandum Opinion
Page 40

that such inquiries went to James's credibility and James's deal

with the government.

Federal Rule of Evidence 608 states that

> Except for a criminal conviction under Rule 609,
> extrinsic evidence is not admissible to prove
> specific instances of a witness's conduct in
> order to attack or support the witness's
> character for truthfulness. But the court may,
> on cross-examination, allow them to be inquired
> into if they are probative of the character for
> truthfulness or untruthfulness of [] the
> witness[.]

Fed. R. Evid. 608. Here, the testimony that Willis's counsel

sought to elicit addressed a prior specific instance of James's

conduct. Though such instances may be the subject of cross-

examination when they go to the witness's character for

truthfulness, there is no indication here that the line of

inquiry Willis proposed would go to James's character for

truthfulness. As such, it would appear impermissible under Rule

608.

Moreover, Rule 403 provides that "[t]he court may exclude

relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative

evidence." Fed. R. Evid. 403. Evidence of bias is always

relevant. *See United States v. Green*, 617 F.3d 233, 251 (3d Cir.

2010). Where such evidence's probative value is outweighed by the threat of prejudice, however, the Court may prevent the introduction of that testimony. *See United States v. Maynard*, 476 F.2d 1170, 1174-75 (D.C. Cir. 1973).

In considering if the testimony Willis sought to adduce violated Rule 403, the Court first notes that the probative value of the sought testimony was minimal.  Indeed, there was already evidence on the record that James had some manner of agreement with the government. Though the specifics were unknown, the testimony allowed the jury to infer some level of bias. Where, as here, counsel seeks to elicit testimony that a witness has engaged in something illegal, there is the prejudicial danger that "the witness will be disbelieved because he is a 'bad man,' even though the proof does not contain the showing of a conviction that is necessary for an attack on general veracity." *United States v. Robinson*, 530 F.2d 1076, 1081 (D.C. Cir. 1976).  Additionally, as this was an *alleged* criminal act, introduction of evidence regarding whether any crime had been committed ran the risk of creating a trial within a trial. Such a situation would create undue confusion, delay, and a waste of time. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1346 (3d Cir. 2002)(stating that "a trial within a trial" would have created the potential risk of undue delay and waste

of time and, weighed against evidence of low probative value, merited exclusion under Rule 403). Given the minimal probative value of the testimony Willis sought, and the danger of allowing such testimony in, Rule 403 barred introduction of such evidence here.

Though Willis argues that curtailing this specific line of questioning violated his confrontation rights, because such testimony went to James's deal with the government, this is untrue. Willis was permitted to question James regarding his deal with the government, and exercised that right. To the extent Willis believed that James was misstating the content of his deal, Willis was welcome to impeach James by asking him specific questions about that agreement. Getting into the specifics of the underlying conduct in the manner Willis's counsel attempted was not necessary to that inquiry and would have violated Rule 403.

As such, the Court finds that Willis is not entitled to a new trial on this basis.

### IV.   CONCLUSION

Upon consideration of the record and after consideration of the relevant law, the Court does not find that Rule 29 or Rule 33 relief is merited.  An appropriate order follows.